SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**East Orange Educational Support Professionals' Association v. East Orange Board of Education** (A-79-24) (090489)

**Argued February 2, 2026 -- Decided August 5, 2026**

**JUSTICE HOFFMAN, writing for the Court.**

In this appeal, the Court reviews an arbitrator's decision that the East Orange Board of Education (Board) violated a collective bargaining agreement provision when, pursuant to N.J.S.A. 18A:7F-9(e)(1), the Board stopped paying custodial employees their full salary plus an additional one hundred and fifty percent of their salary for days they worked during the COVID-19 pandemic.

The East Orange Educational Support Professionals' Association (EOESPA) represents custodians employed by the Board. EOESPA and the Board were subject to a collective bargaining agreement (CBA), dating back to 2011. According to Article XXIII(B)(2) of the CBA: "Custodians who do work on any day when schools are closed for an emergency shall be paid 1 1/2 times their salary in addition to their regular day of pay."

In March 2020, Governor Philip D. Murphy declared a public health emergency and state of emergency in response to the onset of the COVID-19 pandemic and ordered that all schools would be closed to students. In April 2020, the Legislature amended N.J.S.A. 18A:7F-9, in part adding subsection (e)(1), which provides that "public school employees covered by a collective negotiations agreement [(CNA)] shall be entitled to compensation . . . as provided in the [CNA] as if the school facilities remained open for any purpose."

When Governor Murphy first declared the COVID-19 state of emergency, the Board paid custodial employees appearing for work in-person two hundred and fifty percent of their regular pay. However, in accordance with N.J.S.A. 18A:7F-9(e)(1) and its express mandate that custodial employees should be paid as if the schools remained "open," not closed, the Board ceased paying the additional one hundred and fifty percent of the custodians' compensation on July 13, 2020.

EOESPA filed a grievance with the Public Employment Relations Commission, alleging violations of additional-pay provisions in the CBA. The

1

arbitrator determined that the Board violated the custodial CBA when it stopped paying employees in accordance with Article XXIII(B)(2). The Chancery Division confirmed the arbitration award. The Appellate Division reversed. The Court granted certification. 261 N.J. 168 (2025).

**HELD:** The arbitrator's decision is contrary to the express and unequivocal mandate for employee pay outlined in N.J.S.A. 18A:7F-9(e)(1). The arbitrator's decision, therefore, is not reasonably debatable, and the Court affirms the decision of the Appellate Division vacating the arbitration award as it pertains to custodial employees.

1. In the public sector, an arbitrator's award will be confirmed so long as the award is reasonably debatable. But when an award causes direct contradiction with law or public policy, that award cannot stand. Here, the parties dispute whether the arbitral award conformed to N.J.S.A. 18A:7F-9(e)(1), which was added to the statute governing State aid to school districts in April 2020. The subsection consists of two sentences. The first discusses the relationship between subsections (b) through (d) of the statute and collective bargaining agreements, providing that "[n]othing in subsection b., c., or d. of this section shall be construed to limit, supersede or preempt the . . . compensation . . . afforded to public school employees . . . under . . . a [CBA]." The second sentence addresses compensation for employees of a school district that is closed "for a period longer than three consecutive school days" "due to a declared state of emergency" or other emergent reason and mandates that employees be paid as if the schools remained open. That sentence contains an exception for the negotiation of additional compensation based on additional work performed. (pp. 13-15)

2. The arbitrator's decision that the custodial employees should be paid as if the schools were closed instead of "open" is not reasonably debatable under the plain language of N.J.S.A. 18A:7F-9(e)(1). Here, the statutory prerequisites for treating the schools as "open" are met: (1) the schools were closed "due to a declared state of emergency [and] declared public health emergency" "for a period longer than three consecutive school days," and (2) the custodial employees are "covered by a collective negotiations agreement." N.J.S.A. 18A:7F-9(e)(1). Thus, N.J.S.A. 18A:7F-9(e)(1) -- by its express language -- applies, and the plain language of this statute dictates that the custodians "shall be entitled to compensation . . . as provided in the collective negotiations agreement as if the school facilities remained open for any purpose" -- i.e., their standard salary, not their standard salary plus an additional one hundred and fifty percent. The arbitrator's public policy determination is also not reasonably debatable. The arbitrator's interpretation that the statute only protects employees from losses directly contravenes the clear dictates of the statute, which expressly provide for additional compensation for employees under certain circumstances. Noting that the custodians do not contend they engaged in any

2

subsequent negotiations or that they performed any "additional work" during the timeframe at issue, the Court sees no reason to depart from the Appellate Division's reasonable interpretation that the statute "both ensured school employees would be compensated as if school facilities remained open . . . and limited the financial exposure of school districts for extra compensation arising from school facility closures."  (pp. 16-18)

3.  Because the plain language of N.J.S.A. 18A:7F-9(e)(1) is clear, the Court does not consider contradictory legislative history noted by the dissent that states, very generally, that "[n]othing in the bill" limits, supersedes, or preempts compensation under a CBA, and that does not distinguish the statutory subsections as the statute does.  No party raised this legislative history, and it is not mentioned in any prior decision.  Citing the interpretive principle that expression of one thing suggests the exclusion of another left unmentioned, the Court finds clear legislative intent that subsection (e), unlike the other listed subsections, must be followed over contrary CBA provisions.  In response to an argument raised by an amicus, the Court explains why it does not agree that the statute was meant to apply only to employees unable to work in-person.  (pp. 19-22)

**AFFIRMED.**

**CHIEF JUSTICE RABNER, dissenting,** expresses the view that N.J.S.A. 18A:7F-9 is ambiguous, but that the Sponsors' Statements to the relevant bills directly address the question at the heart of this dispute -- What, if any, effect did the Legislature's amendment have on existing collective bargaining agreements? -- through the sentence:  "Nothing in the bill may be construed to limit, supersede, or preempt the rights, privileges, [and] compensation . . . afforded to public school employees . . . or any provision of a collective bargaining agreement entered into by the school district."  To find that the law eliminated benefits protected by existing collective bargaining agreements, the dissent writes, is exactly the opposite of what the legislative history plainly states.  Faced with an ambiguous provision of law, and more than one plausible way to interpret it, an arbitrator's judgment is "at least reasonably debatable" and entitled to deference, Chief Justice Rabner explains.

**JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion.  CHIEF JUSTICE RABNER filed a dissent.**

3

# SUPREME COURT OF NEW JERSEY
## A-79 September Term 2024
## 090489

East Orange Educational
Support Professionals'
Association and East Orange
Maintenance Association,

Plaintiffs-Appellants,

v.

East Orange Board of
Education,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| February 2, 2026 | August 5, 2026 |

Sanford R. Oxfeld argued the cause for appellants (Oxfeld Cohen, attorneys; Sanford R. Oxfeld, of counsel and on the briefs).

Ramon E. Rivera argued the cause for respondent (Antonelli Kantor Rivera, attorneys; Ramon E. Rivera, of counsel and on the brief, and Madelaine P. Hicks, and Zohar C. Hasson, on the brief).

Richard A. Friedman argued the cause for amicus curiae New Jersey Education Association (Zazzali, attorneys; Richard A. Friedman, of counsel and on the brief, and Wesley B. Friedman, on the brief).

1

Rimma Razhba, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jennifer Davenport, Acting Attorney General, attorney; Benjamin M. Shultz and Sookie Bae-Park, Assistant Attorneys General, of counsel, and Gary W. Baldwin, Deputy Attorney General, on the brief).

Arnold Shep Cohen submitted a brief on behalf of amicus curiae IFPTE Local 195 (Oxfeld Cohen, attorneys; Arnold Shep Cohen, of counsel and on the brief).

JUSTICE HOFFMAN delivered the opinion of the Court.

In this case, we review an arbitrator's decision that the East Orange Board of Education (Board) violated a collective bargaining agreement provision when, pursuant to N.J.S.A. 18A:7F-9(e)(1), the Board stopped paying custodial employees their full salary plus an additional one hundred and fifty percent of their salary for days they worked during the COVID-19 pandemic. We find that the arbitrator's decision is contrary to the express and unequivocal mandate for employee pay outlined in the above statute. The arbitrator's decision, therefore, is not reasonably debatable, and we affirm the decision of the Appellate Division vacating the arbitration award as it pertains to custodial employees.

2

## I.

The East Orange Educational Support Professionals' Association (EOESPA) represents custodians employed by the Board. EOESPA and the Board were subject to a collective bargaining agreement (CBA), dating back to 2011, which memorializes the terms and conditions of employment for custodians in the East Orange school district. According to Article XXIII(B)(2) of the CBA: "Custodians who do work on any day when schools are closed for an emergency shall be paid 1 1/2 times their salary in addition to their regular day of pay." The CBA does not define the terms "closed" or "closed for an emergency."

## A.

Starting in March 2020, Governor Philip D. Murphy, in response to the onset of the COVID-19 pandemic, signed a series of executive orders. On March 9, 2020, Governor Murphy declared a public health emergency and a state of emergency. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). Governor Murphy subsequently ordered that all schools would be closed to students starting on March 18, 2020. Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020). This order provided that the Commissioner of the Department of Education, in consultation with the Commissioner of the Department of Health, could keep schools open "on a

limited basis for the provision of food or other essential, non-educational services." Ibid.

The State Legislature likewise acted in the wake of COVID-19. Relevant here, in April 2020, the Legislature amended N.J.S.A. 18A:7F-9 to provide that "public school employees covered by a collective negotiations agreement shall be entitled to compensation, benefits, and emoluments as provided in the collective negotiations agreement as if the school facilities remained open for any purpose." L. 2020, c. 27, § 1 (codified at N.J.S.A. 18A:7F-9(e)(1)) (emphases added).

On August 13, 2020, Governor Murphy superseded his previous orders on school closures and ordered that schools could reopen for in-person instruction subject to certain health and safety standards. Exec. Order No. 175 (Aug. 13, 2020), 52 N.J.R. 1699(a) (Sept. 21, 2020). Almost two years later, effective March 7, 2022, Governor Murphy terminated the COVID-19 public health emergency. Exec. Order No. 292 (Mar. 4, 2022), 54 N.J.R. 511(a) (Apr. 4, 2022). Effective February 16, 2026, Governor Murphy terminated the COVID-19 state of emergency. Exec. Order No. 415 (Jan. 16, 2026), 58 N.J.R. 1039(a) (Feb. 17, 2026).[1]

---

[1] Both the arbitrator's and Appellate Division's opinions state that the COVID-19 state of emergency ended on July 4, 2021. As noted above, the state of emergency was not terminated until 2026, and while the public health

4

When Governor Murphy first declared the COVID-19 state of emergency in March 2020, the Board paid custodial employees appearing for work in-person two hundred and fifty percent of their regular pay. However, in accordance with N.J.S.A. 18A:7F-9(e)(1) and its express mandate that custodial employees should be paid as if the schools remained "open," not closed, the Board ceased paying the additional one hundred and fifty percent of the custodians' compensation on July 13, 2020.

B.

In response, the Unions -- EOESPA, on behalf of custodial employees, and the East Orange Maintenance Association (EOMA), on behalf of security and maintenance employees -- filed grievances with the Public Employment Relations Commission, alleging violations of additional-pay provisions in their respective CBAs. The grievances were consolidated into one arbitration.

The arbitrator held a hearing on September 20, 2021, and issued an opinion and award on January 16, 2022. The arbitrator determined, as relevant here, that the Board violated the custodial CBA when it stopped paying employees in accordance with Article XXIII(B)(2).

---

emergency was initially terminated on June 4, 2021, it was reinstated on January 11, 2022. Exec. Order No. 244 (June 4, 2021), 53 N.J.R. 1131(a) (July 6, 2021); Exec. Order No. 280 (Jan. 11, 2022), 54 N.J.R. 203(a) (Feb. 7, 2022).

The issue, as initially stated in the arbitrator's opinion, was: "Did the Board of Education violate the CBAs when, on July 13, 2020, it ceased paying additional pay to employees covered by this grievance? If so, what shall be the remedy?" The arbitrator subsequently reframed the issue in the following way: "The question actually presented is: What does it mean when we say 'Schools are closed?'"

The arbitrator concluded that the schools were "closed" because, from the arbitrator's perspective, the school facilities were not open to students as they typically would be:

> When you and your kids wake up at 6am to snow falling outside your window, you call the school to see if it's open; so too do the teachers. They are hardly curious about whether the office staff and the principal will be in the building. They want to know if school is open for the kids. If not, it's closed.

The arbitrator was not persuaded by the Board's reliance on the language of N.J.S.A. 18A:7F-9(e)(1), finding, without analyzing the express dictates of the subsection, that its language "is not entirely clear to me." According to the arbitrator, "its purpose would appear to be to protect bargaining unit employees from losses -- not additional pay -- sustained due to closures longer than three days."

Based on the arbitrator's determination that the schools should, instead, be treated as if they were "closed," the arbitrator decided that the Board

6

violated Article XXIII(B)(2) of the custodial CBA when it stopped paying custodians two hundred and fifty percent of their pay. The arbitrator directed the Board to pay the custodians who worked while the schools were closed to students "1 1/2 times their salary in addition to their regular day of pay."

The arbitrator further determined the security employees who worked during the state of emergency were entitled to time and one-half of their pay, and that the maintenance employees were not entitled to extra pay, under their respective CBAs.

C.

The Unions filed an action in the Chancery Division to confirm the arbitration award in its entirety.[2] On June 16, 2022, the Chancery Division heard oral argument and confirmed the arbitration award, finding the

---

[2] The Unions acknowledged in their complaint that the arbitrator denied in part the security employees' grievance and denied in full the maintenance employees' grievance. However, the Unions still requested that the entire arbitration award be confirmed. In a letter brief in support of their order to show cause, EOMA attempted to "reserve[] the right to move for vacation of any part of the arbitrator's award in which it was not fully successful, but only in the event the Board opposes this application and seeks to have any part of the award of [the arbitrator] vacated." In the Unions' reply letter brief to the answer and opposition filed by the Board, they sought to vacate the part of the arbitration award concerning the maintenance employees. The trial court declined to consider the Unions' "backup position," stating, "what was to be addressed today is what is in the verified complaint. The verified complaint seeks affirmance of the entire award."

7

arbitrator's award to be "reasonably debatable."  The court, in its oral ruling, noted:

> But I really find it to be much more than reasonably debatable . . . .  I find that the arbitrator looked at the language of each distinct collective bargaining agreement that he assessed the language, that he applied the language to the facts, that he interpreted the language.  He made a decision that the interpretation should be by plain language.

The court never referenced the operative statute, N.J.S.A. 18A:7F-9(e)(1), opining only that the award "is not contrary to any law, regulation or precedent."  The court also did not "find that there are any public policy grounds, which have been articulated upon which [the award] should be vacated."

D.

The Board appealed the Chancery Division's judgment.[3]  In an unpublished opinion dated February 25, 2025, the Appellate Division reversed

---

[3]  The Unions cross-appealed the Chancery Division's order to the extent it confirmed the arbitration award denying extra compensation for maintenance employees.  The Board then argued that if the appellate court considered the Unions' cross-appeal regarding maintenance employees, it should also consider the award for security employees.  The appellate court agreed with the Chancery Division that the Unions did not properly raise the issue regarding maintenance employees below and dismissed the cross-appeal.  Because the Appellate Division dismissed the cross-appeal, it did not consider the Board's challenge regarding security employees.  We agree with the Appellate Division decision in this regard and therefore confine our decision to the issues raised by custodial employees.

8

the Chancery Division's order confirming the arbitration award in favor of the custodians and remanded to the trial court to vacate that part of the award.

The Appellate Division found the express language of N.J.S.A. 18A:7F-9(e)(1) to be "unequivocal." The statute, according to the appellate court, "requires the Board's custodial employees to be compensated as if the Board's school facilities had been open." The appellate court found the dual purposes of the statute to be "evident": it "both ensured school employees would be compensated as if school facilities remained open, regardless of the vagaries of the pandemic, and limited the financial exposure of school districts for extra compensation arising from school facility closures."

The appellate court was "not persuaded by the Unions' argument [that] the statute is intended only to prevent employee losses associated with a state of emergency," finding that "[n]othing in the plain language of the statute supports" such a reading. It also noted that the statute expressly permits employees to "negotiate[]" "additional compensation" for "additional work performed" but that the custodial employees did not contend they performed any additional work.

The Appellate Division concluded that the arbitrator's award to custodial employees was "directly contrary to N.J.S.A. 18A:7F-9(e)(1) and its embodiment of public policy." Thus, it held that the arbitrator's interpretation

9

was "not reasonably debatable" and remanded to the trial court for entry of an order vacating the arbitration award for custodial employees.

E.

This Court granted the Unions' petition for certification on July 10, 2025. 261 N.J. 168 (2025). We also granted amicus curiae status to the New Jersey Education Association; the International Federation of Professional and Technical Engineers, Local 195; and the Attorney General of New Jersey.

II.

A.

The Unions request that the Chancery Division's decision be reinstated, arguing that the Appellate Division failed to analyze this case under the deferential reasonably debatable standard. Further, the Unions assert that the Appellate Division held that N.J.S.A. 18A:7F-9(e)(1) preempted the CBA terms without specifically addressing preemption jurisprudence. The Unions contend that, because the statute does not expressly set a term and condition of employment, it does not preempt the CBA provision. Additionally, the Unions assert that the statute was enacted to protect certain school employees from economic loss and that it is "inconceivable" that the statute could be read to the detriment of custodial employees.

10

Amicus New Jersey Education Association (NJEA) supports the Unions' position. The NJEA argues that the statutory language following "as if the school facilities remained open for any purpose" -- which reads "and for any time lost as a result of school closures or use of virtual or remote instruction" -- shows that the statute was meant to address employees physically unable to attend work and does not address compensation for on-site employees. Additionally, the NJEA agrees with the Unions that the Appellate Division did not apply the deferential reasonably debatable standard and that N.J.S.A. 18A:7F-9(e)(1) did not expressly preempt negotiated rights to extra compensation for custodial employees reporting to work.

Amicus International Federation of Professional and Technical Engineers, Local 195 (IFPTE) also supports the Unions and asks this Court to reverse the Appellate Division's decision. The IFPTE contends that, because the Chancery Division agreed with the arbitrator's determination, "it is obviously reasonably debatable." Further, the IFPTE argues that the Appellate Division's policy findings, including that the statute is meant to limit the financial exposure of schools, are speculative.

B.

The Board contends that the Appellate Division correctly found that the arbitration award is not reasonably debatable. It argues that the arbitrator "was

11

not at liberty to engage the use of interpretive devices in concluding that the schools were 'closed' because the Legislature had already supplied an answer to that question" in N.J.S.A. 18A:7F-9(e)(1), which mandates that employees are to be paid under a "collective negotiations agreement as if the school[s]" were "open." It also asserts that N.J.S.A. 18A:7F-9(e)(1) preempts the applicable provision of the CBA because the statute establishes a specific condition of employment that is clear and unambiguous.

Amicus the Attorney General supports the Board and asks this Court to affirm the Appellate Division. The Attorney General notes that although the statute says "[n]othing in subsection b., c., or d. of this section shall be construed to limit, supersede or preempt" provisions of CBAs, it specifically excludes subsection (e) -- the subsection at issue in this case -- from that provision. Consequently, the Attorney General argues that the Legislature intended that subsection (e) would override contrary provisions of CBAs. Further, the Attorney General asserts that the statute sets both a floor and a cap on employee pay -- the latter of which is clear because "additional compensation" is available, but only "for additional work performed," subject to a subsequent negotiated agreement by the parties. According to the Attorney General, "[i]t makes sense that the Legislature would thus try to help

12

local governments stay fiscally sound by limiting an extended period of premium pay for school employees absent their performing additional work."

### III.

### A.

"In the public sector, an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Linden Bd. of Educ. v. Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010) (quoting Middletown Twp. PBA Local 124 v. Township of Middletown, 193 N.J. 1, 11 (2007)). To be "reasonably debatable," the arbitrator's findings and conclusions must be "justifiable" or "fully supportable in the record." PBA Local No. 11 v. City of Trenton, 205 N.J. 422, 431 (2011) (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). Under this deferential standard, a "court may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's interpretation." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006). The reasonably debatable standard applies to an arbitrator's interpretation of contracts and statutes, as well as resolution of public policy questions. See Borough of East Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 202-03, 206-07 (2013).

13

That said -- there is a clear line drawn:  when an award "causes direct contradiction with law or public policy," that award cannot stand.  Id. at 207; see also Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996) ("[A]rbitrators cannot be permitted to authorize litigants to violate either the law or those public-policy principles that government has established by statute, regulation or otherwise for the protection of the public."); Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 364-65 (1994) ("[I]n a public-sector arbitration setting, a court can properly vacate an award because of a mistake of law . . . because public policy demands that a public-sector arbitrator, who must consider the effect of a decision on the public interest and welfare, issue a decision in accordance with the law."  (citation omitted)).  "[P]ublic policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the common weal."  N.J. Tpk. Auth. v. Local 196, 190 N.J. 283, 295 (2007).

B.

Here, the parties dispute whether the arbitral award conformed to N.J.S.A. 18A:7F-9(e)(1), which was added to the statute governing State aid to school districts on April 14, 2020.  L. 2020, c. 27, § 1.  Subsection (e)(1) provides as follows:

14

Nothing in subsection b., c., or d. of this section shall be construed to limit, supersede or preempt the rights, privileges, compensation, remedies, and procedures afforded to public school employees or a collective bargaining unit under federal or State law or any provision of a collective bargaining agreement entered into by the school district. In the event of the closure of the schools of a school district due to a declared state of emergency, declared public health emergency, or a directive by the appropriate health agency or officer to institute a public health-related closure for a period longer than three consecutive school days, public school employees covered by a collective negotiations agreement shall be entitled to compensation, benefits, and emoluments as provided in the collective negotiations agreement as if the school facilities remained open for any purpose and for any time lost as a result of school closures or use of virtual or remote instruction, except that additional compensation, benefits, and emoluments may be negotiated for additional work performed.

[N.J.S.A. 18A:7F-9(e)(1).]

The subsection consists of two sentences. The first discusses the relationship between subsections (b) through (d) of the statute and collective bargaining agreements. The second addresses compensation for employees of a school district that is closed "for a period longer than three consecutive school days" "due to a declared state of emergency" or other emergent reason and mandates that employees be paid as if the schools remained open. That sentence contains an exception for the negotiation of additional compensation based on additional work performed.

15

"As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." State v. Butler, 89 N.J. 220, 226 (1982); see also Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 380 (2024) (law is applied as written if the plain language is clear and unambiguous). Statutory enactments that are "part of a larger statutory framework should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012).

IV.

With those principles in mind, we turn to the text of N.J.S.A. 18A:7F-9(e)(1). Based on our review of the statute, we agree with the Appellate Division that the arbitral award regarding custodial employees must be vacated.

A.

The arbitrator's decision that the custodial employees should be paid as if the schools were closed instead of "open" is not reasonably debatable under the plain language of N.J.S.A. 18A:7F-9(e)(1). Here, the statutory prerequisites for treating the schools as "open" are met: (1) the schools were

16

closed "due to a declared state of emergency [and] declared public health emergency" "for a period longer than three consecutive school days," and (2) the custodial employees are "covered by a collective negotiations agreement." N.J.S.A. 18A:7F-9(e)(1).  Thus, N.J.S.A. 18A:7F-9(e)(1) -- by its express language -- applies, and the plain language of this statute dictates that the custodians "shall be entitled to compensation . . . as provided in the collective negotiations agreement as if the school facilities remained open for any purpose" -- i.e., their standard salary, not their standard salary plus an additional one hundred and fifty percent.

Here, the arbitrator decided that employees should be paid as if schools were not "open."  Because the arbitrator's decision directly contradicts N.J.S.A. 18A:7F-9(e)(1), it is neither "fully supportable in the record" nor "justifiable," and thus is not reasonably debatable.  See PBA Local No. 11, 205 N.J. at 431; Borough of East Rutherford, 213 N.J. at 207 (award that "causes direct contradiction with law" cannot stand).

B.

The arbitrator's public policy determination is, similarly, not reasonably debatable.  After simply stating that N.J.S.A. 18A:7F-9(e)(1) "is not entirely clear to [him]," the arbitrator surmised that "its purpose would appear to be to protect bargaining unit employees from losses -- not additional pay --

17

sustained due to closures longer than three days."  The arbitrator's interpretation that the statute only protects employees from losses directly contravenes the clear dictates of the statute, which expressly provide for additional compensation for employees under certain circumstances: "additional compensation . . . may be negotiated for additional work performed."  N.J.S.A. 18A:7F-9(e)(1) (emphases added).  It is clear from the statutory language itself that the Legislature was not considering only employee losses when enacting N.J.S.A. 18A:7F-9(e)(1).  See N.J. Tpk. Auth., 190 N.J. at 295 ("[P]ublic policy sufficient to vacate an award must be embodied in legislative enactments . . . .").  Notably, the custodians do not contend they engaged in any subsequent negotiations or that they performed any "additional work" during the timeframe at issue here, and thus they were admittedly not entitled to any "additional compensation" pursuant to N.J.S.A. 18A:7F-9(e)(1).

The Appellate Division -- following the language of the statute -- aptly observed that the statute "both ensured school employees would be compensated as if school facilities remained open . . . and limited the financial exposure of school districts for extra compensation arising from school facility closures."  We see no reason to depart from this reasonable interpretation of a

18

balanced statutory construct and, instead, credit the arbitrator's policy interpretation that is contradicted by express statutory terms.

## C.

The dissent makes much of the legislative history. See post at ___ (slip op. at 2, 5, 12, 16-17). However, the dissent concedes that "[w]hen a case involves the direct review of a statute, courts do not consider legislative history if the text of the statute is clear." Post at ___ (slip op. at 16).

The plain language of N.J.S.A. 18A:7F-9(e)(1) is clear -- including when it outlines which subsections do not limit, supersede, or preempt CBAs and omits subsection (e): "Nothing in subsection b., c., or d. of this section shall be construed to limit, supersede or preempt the . . . compensation . . . afforded to public school employees . . . under . . . a collective bargaining agreement . . . ." N.J.S.A. 18A:7F-9(e)(1) (emphases added). Because N.J.S.A. 18A:7F-9(e)(1) is clear -- and specifically leaves the operative subsection (e) off the list -- we need not consider contradictory legislative history that states, very generally, that "[n]othing in the bill" limits, supersedes, or preempts compensation under a CBA, and does not distinguish the statutory subsections as the statute does. Notably, neither party cited nor discussed this legislative history, and it is hard to imagine this could be as controlling as the dissent posits when no party raised it and it is not mentioned in any prior decision.

19

Further, the exclusion of subsection (e) clearly evidences legislative intent that subsection (e), unlike the other listed subsections, must be followed over contrary CBA provisions. See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112 (2004) (recognizing the "canon of statutory construction, expressio unius est exclusio alterius -- expression of one thing suggests the exclusion of another left unmentioned"). N.J.S.A. 18A:7F-9(e)(1) controls in this case, and it was not reasonably debatable for the arbitrator to decide that the custodial employees should be paid under their CBAs as if the schools were closed when the statute prohibits such an interpretation.

## D.

We are not persuaded by the NJEA's argument (elaborated upon by the Unions at oral argument) that the statutory provision "and for any time lost as a result of school closures or use of virtual or remote instruction" shows that the statute was only meant to apply to employees unable to work in-person.[4] Nothing in the plain language of the statute suggests such a reading. Instead,

---

[4] The arbitrator did not rely on the provision "and for any time lost as a result of school closures or use of virtual or remote instruction" in the arbitration opinion and award. In fact, when reciting the statutory language in the opinion, the arbitrator did not even cite the clause in full, stopping with "and for any time lost as a result of school closures." It is difficult to foresee a scenario in which this argument could make the arbitrator's decision "reasonably debatable" when it does not even appear in the arbitrator's opinion and was not raised before or considered by the trial court.

this provision ensures employees were paid for their work during school closures or virtual instruction before the statutory amendments went into effect (i.e., from when in-person instruction initially ended due to COVID-19 through April 14, 2020).

The plain language of the statute indicates that it was meant to apply to employees generally, not only to those unable to work in-person. The provision broadly applies to "public school employees covered by a collective negotiations agreement." N.J.S.A. 18A:7F-9(e)(1). If the Legislature intended this provision to apply only to a specific subset of employees who could not work in-person, it easily could have made this critical distinction. It did not.

We cannot and should not write a distinction into the statute that the Legislature chose not to create. See Craster v. Bd. of Comm'rs of Newark, 9 N.J. 225, 230 (1952) ("The court should not write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment."); O'Connell v. State, 171 N.J. 484, 488 (2002) ("A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."). In fact, even the arbitrator recognized that the statute does not solely apply to employees unable to work in-person, broadly stating that the statute's "purpose would appear to be to protect bargaining unit employees."

21

The statutory phrase "and for any time lost as a result of school closures or use of virtual or remote instruction" does not require the NJEA's proposed interpretation to have meaning within the statute. In fact, it is straightforwardly and best read as a limited retroactivity clause.[5] The April 2020 amendments, generally, do not apply retroactively. However, by specifically accounting for "time lost" from school closures or virtual instruction, the Legislature, through the plain language of the statute, ensured that employees would receive their "compensation . . . as provided in the collective negotiations agreement" when schools initially closed or switched to virtual instruction in March 2020, but before the statutory amendment went into effect on April 14, 2020. See Gibbons v. Gibbons, 86 N.J. 515, 522 (1981) ("[R]etroactive application may be necessary . . . to give [the statute] the most sensible interpretation."). This interpretation comports with the Legislature's goal that employees would be paid as if schools were open -- which protects both employees and the school districts.

---

[5] Notably, the Unions appear to concede that in this clause, the Legislature expressed a retroactive purpose. In their petition for certification brief, the Unions write: "It must be borne in mind that there were days when schools were closed and remote instruction was not yet established, and without the benefit of the statute, professional teaching staff might not have been paid for those days." And at oral argument before this Court, counsel for the Unions admitted that the "any time lost" language could serve to protect the pay of East Orange custodial workers who may not have appeared for work in-person in March 2020 due to COVID-19, before this statute was amended.

E.

Because this case can be resolved using the reasonably debatable standard, we need not reach the parties' arguments on this Court's preemption jurisprudence. See In re Local 195, 88 N.J. 393, 404-05 (1982).

V.

The arbitrator's opinion and award regarding custodial employees are contrary to the express dictates of N.J.S.A. 18A:7F-9(e)(1) and are, therefore, not reasonably debatable. Accordingly, we affirm the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

JUSTICES PATTERSON, PIERRE-LOUIS, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE HOFFMAN's opinion. CHIEF JUSTICE RABNER filed a dissent.

23

East Orange Educational
Support Professionals'
Association and East Orange
Maintenance Association,

Plaintiffs-Appellants,

v.

East Orange Board of
Education,

Defendant-Respondent.

CHIEF JUSTICE RABNER, dissenting.

This appeal involves a statutory amendment adopted in the early days of the COVID-19 pandemic. The amendment allowed virtual and remote instruction to count toward the minimum requirement of a 180-day school year. N.J.S.A. 18A:7F-9.

Under collective bargaining agreements in place at the time, custodial and security staff were entitled to additional pay if they worked when schools were closed for an emergency. The parties disagreed about the impact of the new law on that benefit. They submitted their dispute to an arbitrator, who ruled in the unions' favor in part. The trial court confirmed the award.

1

At the heart of this dispute lies a straightforward question: What, if any, effect did the Legislature's amendment have on existing collective bargaining agreements? The legislative history answers the question directly: "Nothing in the bill may be construed to limit, supersede, or preempt the rights, privileges, [and] compensation . . . afforded to public school employees . . . or any provision of a collective bargaining agreement entered into by the school district." Sponsors' Statement to A. 3904 6 (L. 2020, c. 27); Sponsors' Statement to S. 2337 8 (L. 2020, c. 27) (emphases added).

Notwithstanding the above language and the deferential standard of review that applies to arbitration awards, the Appellate Division rejected the arbitrator's award, as the majority does now. The appellate court found that the law eliminated benefits protected by existing collective bargaining agreements. In doing so, the court, in effect, held that the law stood for exactly the opposite of what the legislative history plainly states.

For a court to override an arbitration award, it must find the award is not "reasonably debatable." Borough of Carteret v. Firefighters Mut. Benevolent Ass'n, 247 N.J. 202, 211 (2021). Among other reasons, because the majority fails to follow that principle and overlooks a clear statement of legislative intent, I respectfully dissent.

2

I.

A.

The majority sets forth relevant background facts to this appeal. The Governor declared a public health emergency and a state of emergency on March 9, 2020, in response to the COVID-19 pandemic. Exec. Order No. 103 (Mar. 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). The public health emergency was initially terminated on June 4, 2021. Exec. Order No. 244 (June 4, 2021), 53 N.J.R. 1131(a) (July 6, 2021). During that time, public schools were generally closed, and students were taught remotely. See Exec. Order No. 104 (Mar. 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020) (closing schools to students with limited exceptions for the provision of food and other select services). Although teachers worked remotely, custodial, security, and maintenance employees reported to work in person. The state of emergency ended at a later time.

Prior to the pandemic, the defendant, East Orange Board of Education, had entered into collective bargaining agreements with different bargaining groups including custodial employees (represented by plaintiff East Orange Education Support Professionals' Association), as well as security and maintenance employees (represented by plaintiff East Orange Maintenance Association).

3

Under those preexisting collective bargaining agreements, on days "when schools [were] closed for an emergency," custodians who worked were entitled to a total of 2.5 times their regular salary, and security employees "required to work during a State of Emergency, as declared by the Governor," were entitled to 1.5 times their regular salary. Maintenance employees were not entitled to additional payments for any days the Governor declared a state of emergency.

The Board paid all three groups of employees 2.5 times their regular pay until July 13, 2020. The Board did so for several months even after the Legislature amended N.J.S.A. 18A:7F-9.

B.

To qualify for State aid, the preexisting statute required districts to "provide[] public school facilities for at least 180 days during the . . . school year." N.J.S.A. 18A:7F-9(a). The amendment allowed "virtual or remote instruction" to count toward the 180-day requirement when schools were closed for more than three consecutive days because of a state of emergency. Id. at (b). The amendment also empowered the superintendent of schools to implement a "program of virtual or remote instruction," id. at (c), and directed the commissioner to "establish guidance" for such a program, id. at (d).

4

Subsection (e)(1), which is central to this appeal, states, in summary, that nothing in the preceding three subsections "shall be construed to limit, supersede or preempt . . . any provision of a collective bargaining agreement." The amendment also provides that "public school employees covered by a collective negotiations agreement shall be entitled to compensation . . . as if the school facilities remained open." Id. at (e)(1).

The amendment made clear that teachers working remotely would be paid during the COVID-19 crisis.  Less clear, as the history of this case demonstrates, is how other staff members would be paid during an emergency. A Statement appended to the Assembly and Senate bills sheds light on the issue.  It reads as follows:

> Nothing in the bill may be construed to limit, supersede or preempt the rights, privileges, compensation, remedies, and procedures afforded to public school employees or a collective bargaining unit under federal or State law or any provision of a collective bargaining agreement entered into by the school district.  The bill also provides that public school employees covered by a collective negotiations agreement will be entitled to compensation, benefits, and emoluments as provided in the collective negotiations agreement as if the school facilities remained open for any purpose and for any time lost as a result of school closures or use of virtual or remote instruction, except that additional compensation, benefits, and emoluments may be negotiated for additional work performed.
>
> [Sponsors' Statement to A. 3904 6 (L. 2020, c. 27); Sponsors' Statement to S. 2337 8 (L. 2020, c. 27).]

5

Twenty-one members of the Senate and Assembly sponsored or co-sponsored the Amendment. See A. 3904 (introduced Mar. 23, 2020; sponsorship updated Apr. 13, 2020) (L. 2020, c. 27).

The Board required custodial and security employees to continue to work in person during the emergency. After the school district stopped paying them additional compensation, the unions filed grievances. They were combined into a single arbitration proceeding.

C.

The arbitrator issued an opinion on January 16, 2022 in favor of the custodial and security employees. He framed the question simply: "Did the Board of Education violate the CBAs [collective bargaining agreements] when, on July 13, 2020, it ceased paying additional pay to employees covered by this grievance?"

The arbitrator first focused on the parties' arguments about whether schools were "closed" within the meaning of the CBAs. He declined to adopt the Board's position that they were open because staff members were present in the building and the district continued to provide lunch for certain students. Applying the ordinary meaning of "closed," he concluded that when schools were not open to students for learning, they were, in fact, "closed" under the CBAs.

The arbitrator also considered the import of N.J.S.A. 18A:7F-9(e)(1) ("the Amendment"). He quoted relevant language from the law's second sentence. For completeness, the remaining language from the Amendment is included in brackets as well:

> [Nothing in subsection b., c., or d. of this section shall be construed to limit, supersede or preempt the rights, privileges, compensation, remedies, and procedures afforded to public school employees or a collective bargaining unit under federal or State law or any provision of a collective bargaining agreement entered into by the school district.] In the event of the closure of the schools of a school district due to a declared state of emergency[, declared public health emergency, or a directive by the appropriate health agency or officer to institute a public health-related closure] for a period longer than three consecutive school days[,] public school employees covered by a collective negotiations agreement shall be entitled to compensation[, benefits, and emoluments as provided in the collective negotiations agreement] as if the school facilities remained open for any purpose and for any time lost as a result of school closures [or use of virtual or remote instruction, except that additional compensation, benefits, and emoluments may be negotiated for additional work performed].

The arbitrator's response was direct and to the point once again: "[T]he provision is not entirely clear to me." Nonetheless, he found that "its purpose would appear to be to protect bargaining unit employees from losses -- not additional pay -- sustained due to closures longer than three days."

Turning to the text of the relevant CBAs, the arbitrator sustained the grievance in part and denied it in part. He concluded that custodial staff were entitled to 2.5 times their regular salary, and security staff to 1.5 times their regular salary on days they worked while schools were closed. The arbitrator also found that maintenance staff were not entitled to extra pay. The unions then sought to confirm the award before the trial court.

II.

Because the parties agreed to arbitration, courts do not serve as the first line of review of their dispute. The parties bargained for the arbitrator's judgment, and it is entitled to "considerable deference." Borough of East Rutherford v. East Rutherford PBA Local 275, 213 N.J. 190, 201 (2013).

Courts have authority to vacate arbitration awards in the following situations: (1) when an "award was procured by corruption, fraud or undue means"; (2) when there was "evident partiality or corruption in the arbitrators"; (3) when "the arbitrators were guilty of misconduct"; and (4) when "the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award . . . was not made." N.J.S.A. 2A:24-8.

An award that resolves a public sector dispute will stand so long as it is "reasonably debatable." Carteret, 247 N.J. at 211. Under that standard, a "court may not substitute its own judgment for" the arbitrator's, "regardless of

8

the court's view of the correctness of the arbitrator's interpretation." N.J. Transit Bus Operations, Inc. v. Amalgamated Transit Union, 187 N.J. 546, 554 (2006). From a practical standpoint, "if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable." Carteret, 247 N.J. at 212.

In rare situations, courts may vacate an arbitration award if it "plainly violates a clear mandate of public policy." N.J. Tpk. Auth. v. Local 196, 190 N.J. 283, 294 (2007) (citing Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996)); Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 364-65 (1994).

### III.

The trial court applied those principles and confirmed the arbitrator's award. "[A]t minimum," the court found, the award was "reasonably debatable." The court went further, though, and found the award "to be much more than reasonably debatable."

The trial court tracked the arbitrator's opinion, point by point, and upheld it. The court added that there were no public policy grounds that justified vacating the award.

The Appellate Division reversed the trial court's order in part and vacated its confirmation of the arbitration award for custodial employees. In

9

other words, the court found that custodial employees were entitled only to straight pay, not 2.5 times regular pay, while schools had been closed.[1]

The Appellate Division concluded the "award of extra compensation . . . to custodial employees <u>conflicts with the public policy embodied</u> in N.J.S.A. 18A:7F-9(e)(1)." (emphasis added). The court found the Amendment was "unequivocal" and that its "purposes" were "evident." More specifically, the court stated that "the Legislature introduced <u>financial certainty and stability</u> in an otherwise fluid situation." (emphasis added).

For support, the Appellate Division cited "common knowledge" and the text of the Amendment, which (a) "ensured school employees would be compensated as if school facilities remained open," and (b) "limited the financial exposure of school districts for extra compensation arising from" the unexpected, lengthy closure of schools as a result of COVID-19.

The Appellate Division therefore found the arbitration award in favor of custodians was "directly contrary to" the Amendment "and its embodiment of

---

[1] The trial court's ruling left in place a partial award of extra compensation for security employees for a total amount of 1.5 times their salary. The majority explains why the Appellate Division addressed only the award of extra pay to custodians. <u>Ante</u> at ___ n.2, ___ n.3 (slip op. at 7 n.2, 8 n.3).

10

public policy." In a reference to the standard that governs arbitration awards, the court stated the award was "not reasonably debatable."

## IV.

I respectfully disagree with the above analysis. In April 2020, the Legislature acted swiftly when it amended existing law at a time of fear and uncertainty. With limited knowledge of the unfolding health crisis, the Legislature took prompt action to ensure that children continued to receive an education, that districts could continue to qualify for state aid without being onsite for 180 calendar days in a year, and that teachers offering remote instruction would know they would continue to be paid as before. The question here relates to the effect of the Amendment on compensation owed to staff members who continued to work onsite under existing CBAs.

## A.

The Board and the Attorney General maintain the Amendment not only established a floor but also set a ceiling for employee salaries. They correctly note that evidence of the floor is clear from the language of the Amendment: "employees shall be entitled to compensation . . . as provided in the collective negotiation agreement as if the school facilities remained open for any . . . use of virtual or remote instruction."

11

But evidence of a ceiling is far from clear. The majority, like the Appellate Division, reads much into the phrase "as if the school facilities remained open." That language, however, does not offer clarity for a number of reasons. It does not directly address additional compensation already designated for employees. It does not set a clear cap or limit on employee compensation. It makes no mention of cutting pay for frontline employees who were required to report to work, at potential risk to themselves, during an emergency. And it says nothing about upending existing CBAs.

Had the Legislature actually intended to limit compensation during an emergency, it could have done so clearly. It could have said, for example, that "notwithstanding any provision of a collective bargaining agreement, no additional compensation shall be paid for work performed during a state of emergency." But it did not. Instead, the Sponsors' Statement says just the opposite: "Nothing in the bill may be construed to limit . . . compensation . . . or any provision of a collective bargaining agreement entered into by the school district." Sponsors' Statement to A. 3904 6; Sponsors' Statement to S. 2337 8.

B.

The majority places weight on the Amendment's introductory phrase -- "Nothing in subsection b., c., or d. shall be construed to limit . . .

12

compensation . . . or any provision of a collective bargaining agreement."

Because subsection (e) is not mentioned, according to the majority, it can be read to limit extra pay. Ante at ___ (slip op. at 19). Another way to interpret the missing reference is also plausible: subsections (b), (c), and (d) added new substantive provisions to the law; subsection (e) explained they should not be read to limit compensation but did not otherwise establish a new rule for existing CBAs. Subsection (e), in fact, contemplated additional negotiations about additional compensation.

Those two concepts do not conflict with one another. The parties could negotiate for new additional services at the same time employees were to be paid under the terms of their existing CBAs. For example, custodians working onsite during a state of emergency could negotiate for additional compensation if they were asked to provide lunch for certain students as well.

In any event, faced with an ambiguous provision of law, and more than one plausible way to interpret it, an arbitrator's judgment is "at least reasonably debatable" and entitled to deference. Carteret, 247 N.J. at 212. Courts reviewing the award "may not substitute [their] own judgment" even if they disagree with the arbitrator. Local 275, 213 N.J. at 201-02. When, as here, the arbitrator's award is "reasonably debatable," it "must" be confirmed. Local 196, 190 N.J. at 301.

13

V.

"[I]n rare circumstances[,] a court may vacate an arbitration award" if it is contrary to public policy. Tretina, 135 N.J. at 364; accord Local 196, 190 N.J. at 294; East Rutherford, 213 N.J. at 202.

In this case, the Appellate Division concluded that the arbitrator's award of extra compensation to custodial employees "conflicts with public policy." The appellate court found that subsection (e) itself is the Legislature's "embodiment of public policy" and was intended to "limit[] the financial exposure of school districts for extra compensation" during the extended "COVID-19 state of emergency." The majority agrees with that interpretation. Ante at ___ (slip op. at 18).

To vacate an arbitration award on public policy grounds, the award must "plainly violate[] a clear mandate of public policy." Local 196, 190 N.J. at 294 (citing Weiss, 143 N.J. at 443); Tretina, 135 N.J. at 364-65. The United States Supreme Court has cautioned that "[s]uch a public policy . . . must be well defined and dominant" "by reference to 'laws and legal precedents and not from general considerations of supposed public interests.'" W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766 (1983) (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)).

14

This Court has followed the same principle: "public policy sufficient to vacate an award must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the" public's well-being. Local 196, 190 N.J. at 295. Neither the text of the Amendment nor its history, however, offer a clear mandate to curtail costs or cut back on benefits in existing collective bargaining agreements.

The Amendment moved from introduction on March 23, 2020, to passage on April 13, 2020. There is no record of any committee hearings, and no legislators offered comments on the bill before they cast voice votes remotely. See N.J. Legislature, Bill A. 3904, https://www.njleg.state.nj.us/bill-search/2020/A3904 (last visited July 13, 2026); N.J. Legislature, Assembly Session March 25, 2020 -- 2 p.m., https://www.njleg.state.nj.us/prior-session-agenda?date=2020-03-25-14:00:00&committee=A&agenda=Session&session=2020; N.J. Legislature, Senate Session April 13, 2020 -- 10 a.m., https://www.njleg.state.nj.us/prior-session-agenda?date=2020-04-13-10:00:00&committee=S&agenda=Session&session=2020. Although the Senate made some changes to other aspects of the bill, no changes were made to the sections relevant to this appeal. Compare A. 3904 (introduced Mar. 23, 2020), with A. 3904 (passed Apr. 13, 2020) (L. 2020, c. 27).

15

Throughout the three-week period while the bill was pending, no statements about fiscal concerns or cost savings on account of extra compensation to custodial, security, and maintenance employees can be found in the legislative history. To the contrary, the Sponsors' Statement makes clear what should happen to existing collective bargaining agreements: they should remain intact. The legislative history, once again, explained in a concise, clear statement of policy that "[n]othing in the bill may be construed to limit, supersede or preempt . . . compensation . . . or any provision of a collective bargaining agreement entered into by the school district." Sponsors' Statement to A. 3904 6; Sponsors' Statement to S. 2337 8 (emphasis added).

When a case involves the direct review of a statute, courts do not consider legislative history if the text of the statute is clear. DiProspero v. Penn, 183 N.J. 477, 492 (2005). But it isn't in this instance. It invites questions that the Sponsors' Statements directly answer. It does not matter whether the parties raised the Statements. See ante at ___ (slip op. at 19). What's important is that the Court not overlook the clarity and force of the Sponsors' words.

In addition, even when an "award implicates a clear mandate of public policy, the deferential 'reasonably debatable' standard still governs." Local 275, 213 N.J. at 203 (citing Weiss, 143 N.J. at 443). In any event, to determine

16

whether this arbitration award violates public policy, courts should not import a policy view that stands for the opposite of what the legislative history reveals.

## VI.

For the reasons set forth above, the arbitrator's award, at a minimum, is reasonably debatable. It is therefore entitled to deference. It is also supported by a clear statement of legislative policy that the Amendment preserved existing collective bargaining agreements. For those and other reasons, I respectfully dissent.